UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TOMMY SIMMONS, III,               ) Case No. CV 04-9731 SVW (JC)
                                  )
                    Plaintiff,    )
                                  ) REPORT AND RECOMMENDATION
          v.                      ) OF UNITED STATES MAGISTRATE
                                  ) JUDGE
COUNTY OF LOS ANGELES,            )
et al.,                           )
                                  )
                    Defendants.   )
_____  )

     This Report and Recommendation is submitted to the Honorable

Stephen V. Wilson, United States District Judge, pursuant to 28 U.S.C. § 636 and

General Order 05-07 of the United States District Court for the Central District of

California.

## I.   SUMMARY

     On June 27, 2007, plaintiff Tommy Simmons, III ("plaintiff"), who is

proceeding *pro se* and in forma pauperis, filed the operative First Amended

Complaint ("First Amended Complaint" or "FAC") alleging, pursuant to 42 U.S.C.

§ 1983, that his civil rights were violated by the County of Los Angeles (the

"County"), the Los Angeles County Sheriff's Department (the "LASD"), and

LASD Sergeants Tommy Harris ("Harris")(now retired), and Robert Taylor, Jr.

1  ("Taylor") (collectively "defendants").  Plaintiff, who essentially alleges that he

2  was maliciously prosecuted and deprived of due process, sues the County and the

3  LASD in their official capacities, and defendants Harris and Taylor in their

4  individual and official capacities.  (FAC at 3).

5      On August 30, 2007, defendants filed a "Motion to Dismiss First Amended

6  Complaint and to Strike Portions of First Amended Complaint" ("Defendants'

7  Motion").  On September 5, 2007, plaintiff filed a Response to Defendants'

8  Motion ("Plaintiff's Response").  On September 12, 2007, defendants filed a

9  Reply to Plaintiff's Response ("Reply").

10      Based upon the record and the applicable law, Defendants' Motion should

11  be granted in part and denied in part, and the First Amended Complaint should be

12  dismissed with leave to amend.[1]

13  **II.  FIRST AMENDED COMPLAINT**

14      Plaintiff's claims appear to arise out of a California state criminal

15  prosecution of plaintiff for murder and attempted murder in Los Angeles County

16  Superior Court Case No. BA128574 (the "underlying criminal case").  (FAC at 1-

17  2).  In 1997, a jury apparently acquitted plaintiff of attempted murder and hung

18  10-2 in favor of acquittal on the murder charge.  (FAC at 2, 10).  Plaintiff was

19  retried on a murder/robbery charge in November 1998 and found guilty.  (FAC at

20  2, 11).[2]

21

22      [1]Separately pending before this court is plaintiff's motion to file a second amended

23  complaint.  As the proposed second amended complaint lodged with such motion does not

    entirely comport with this Report and Recommendation, plaintiff's motion should be denied

24  without prejudice to the filing of a second amended complaint which comports with this Report

    and Recommendation.

25

26      [2]The state court docket of the underlying criminal case, which is attached as Exhibit 1 to

    a motion to dismiss filed in this action on July 12, 2005 (docket no. 37), and of which this court

27  takes judicial notice, reflects that: (1) On March 7, 2003, the Los Angeles County Superior Court

    ("state court") granted plaintiff's state habeas petition; and (2) On December 5, 2003, the state

28  (continued...)

2

1    The First Amended Complaint alleges:

2    On March 23, 1995, in Lancaster, California, a Mr. Hogan was murdered

3    and robbed, and a Ms. Sherouse was assaulted.  (FAC at 2, 4-5, 9).  Defendants

4    Harris and Taylor apparently were involved in the investigation.  (FAC at 3).   On

5    or about April 12, 1995, an informant allegedly told LASD deputy Greg Thurman

6    ("Thurman") that plaintiff was involved in Hogan's death.  (FAC at 5).[3]  After

7    receiving the informant's tip regarding plaintiff's involvement in the crimes,

8    defendants Harris and Taylor showed plaintiff's photograph to multiple witnesses,

9    including Alicia Aries and her son, Alfonzo Ortega, but were unable to obtain a

10   positive identification.  (FAC at 5).

11   Between March 25, 1995 and May 1, 1995, defendant Harris and/or

12   defendant Taylor interviewed Aries and Ortega on at least three occasions.  First,

13   on or about March 25, 1995, defendant Harris telephonically interviewed these

14   witnesses.  Aries told Harris that her car was almost hit by a car near the location

15   of the murder.  (FAC at 4-5).  Second, on March 29, 1995, defendants Harris and

16   Taylor interviewed Aries and Ortega in person.[4]  (FAC at 5, 6).  During the second

17   interview, Aries basically said the same things as she did in her first interview, but

18   better described the passenger in the car.  (FAC at 5).  Aries also hand-drew a

19   diagram of the location where she and the other car almost collided, which

20   purportedly showed that the other car emerged from the middle house on the

21

22   _____

23   [2](...continued)
     court dismissed the murder/robbery charges pursuant to California Penal Code Section 1382, and
24   released plaintiff from custody.  See Fed. R. Evid. 201; Mir v. Little Company of Mary Hosp.,
     844 F.2d 646, 649 (9th Cir. 1988) (court may take judicial notice of court records).

25
     [3]The First Amended Complaint also alleges that in 1991 and 1996, plaintiff's father,
26   Tommie Simmons, Jr., brought lawsuits against Thurman and defendant Harris, and that from
27   this point on, false evidence against plaintiff began to grow.  (FAC at 5-6).

28   [4]Although at one place in the First Amended Complaint plaintiff states the interview
     occurred in 1996 (FAC at 5), this appears to be a typographical error.

block, and not from the corner house where the crimes occurred.  (FAC at 7).
Finally, on or about May 1, 1995, defendants Harris and Taylor interviewed Aries
and Ortega a third time.  (FAC at 6).  Aries basically said the same things she had
said in the prior interviews.  (FAC at 6).  During this third interview, the officers
showed Aries and Ortega a photo line-up with plaintiff's photo numbered as four.
(FAC at 6).  Aries allegedly was still unable to identify anyone.  (FAC at 6).
Ortega, however, indicated that the individual in photo number nine was the driver
of the car, and that he recognized plaintiff's photo as a man who lived next door to
Ortega's friend and drove a white car with a blue top.  (FAC at 6).

On or about May 9, 1995, defendants Harris and Taylor conducted a tape-
recorded interview of the attempted murder victim, Sherouse, at the hospital.
(FAC at 7-10).  Only Sherouse and the two officers were present during at least
the beginning portion of the ninety-minute interview.  (FAC at 8, 10).  Sherouse
claimed not to remember anything about the attack, but said it possibly could have
occurred at night.  (FAC at 4, 9).  Defendants Harris and Taylor told Sherouse that
the attack happened during the day or morning and took place in the living room,
and maybe suggested plaintiff's name to her or coerced her.  (FAC at 8, 9).
Sherouse apparently identified plaintiff as her attacker.  (FAC at 8).

On or about February 29, 1996, defendants Harris and Taylor filed a
supplemental police report which falsely (1) stated that witness Aries, during the
May 1, 1995 interview, described the vehicle that almost hit her as coming from
the corner house (the house where the crimes occurred) (FAC at 6-7); (2) failed to
incorporate Aries' hand-written diagram showing that the vehicle came from a
different house (FAC at 7); (3) stated that the interview with victim Sherouse at
the hospital lasted only 20 minutes; and (4) omitted the fact that the interview of
victim Sherouse was recorded.  (FAC at 7-10).  Defendants Harris and Taylor used
this false police report to have criminal charges brought against plaintiff in the
underlying criminal case.  (FAC at 4).

On or about September 11, 1996, defendant Taylor improperly secured funds for victim Sherouse from the Los Angeles County Witness Protection Program.  (FAC at 10, 12-13).  Defendants concealed Sherouse's medical records which were in their possession, in violation of numerous court orders.  (FAC at 10-11).

On or about October 2 and 3, 1996, defendant Harris improperly told a juvenile dependency court that the LASD would financially support plaintiff's son if the court would emancipate plaintiff's son or terminate a court-ordered wardship.[5]  (FAC at 11, 12-13).

In 1997, in the underlying criminal case, plaintiff moved to suppress victim Sherouse's identification of plaintiff on the ground that defendants Harris and Taylor may have improperly suggested to Sherouse that plaintiff was the attacker and/or coerced Sherouse's  statements outside the presence of hospital staff.  (FAC at 8).  At the suppression hearing, defendants Harris and Taylor falsely testified and caused other witnesses falsely to testify.  (FAC at 8-9).  Defendants Harris and Taylor caused doctors to testify that the doctors were present during Sherouse's hospital interview, and that defendants Harris and Taylor had said nothing improper to Sherouse.  (FAC at 8-9).  The court denied the motion to suppress.  (FAC at 8).  Defendants now admit that doctors were not allowed to be present during the Sherouse interview.  (FAC at 10).

At the 1997 criminal trial, defendants Harris and Taylor falsely testified and caused other witnesses falsely to testify.  (FAC at 9).  Defendant Harris falsely testified that witness Ortega said that both plaintiff and the individual in position nine in the photospread resembled the driver of the car Ortega saw the day of the crimes.  (FAC at 6).  Defendants Harris and Taylor both falsely testified that doctors were present during the hospital interview of Sherouse and encouraged

_____

[5]Plaintiff's son apparently testified against plaintiff at trial.  (FAC at 11-12).

5

multiple witnesses also to testify falsely about the hospital interview, in order

corroborate the officers' testimony.  (FAC at 9).  Defendants now allegedly admit

that doctors were not present during the hospital interview of Sherouse.  (FAC at

10).

During the trial, defendant Harris denied promising that the LASD would

financially support plaintiff's son after plaintiff was found guilty in 1998.  (FAC at

11).  Defendant Harris later, in December 1998, admitted that he did promise the

dependency court that the LASD would financially support plaintiff's son.  (FAC

at 12).

Witness Aries allegedly testified at trial that she did not draw a diagram for

defendants Harris and Taylor.  (FAC at 7).  Aries and defendants Harris and

Taylor now admit that Aries did create a diagram.  (FAC at 7).

In December of 1997, the jury acquitted plaintiff of the attempted murder

charge and hung on the murder/robbery charge.  (FAC at 2, 11).  Plaintiff was

convicted of murder and robbery on retrial in 1998.[6]  (FAC at 11).

Defendants, acting under color of state law, and through their policies,

procedures, and customs violated the Fifth and Fourteenth Amendments by

falsifying a police report and presenting it to the prosecutor which resulted in

plaintiff being maliciously prosecuted, presenting intentionally false testimony to

the jury, and depriving plaintiff of due process and equal protection of the law.

(FAC at 15).  Defendants acted knowingly, deliberately and maliciously with

reckless indifference to plaintiff's civil rights.  (FAC at 14).

Plaintiff seeks monetary damages, attorney's fees and costs, and injunctive

relief, namely, an order requiring the incarceration of defendants in state prison

and the reopening unspecified criminal cases in which defendants were involved.

 (FAC at 16-17).

---

[6]It is unclear from the First Amended Complaint whether any or all of the alleged
testimony given at the 1997 trial was repeated in the 1998 retrial.  As indicated in note 2, supra,
the state court court granted habeas relief and overturned plaintiff's 1998 conviction.

1   **III.   MOTION TO DISMISS**

2          Defendants contend that the First Amended Complaint fails to state a claim

3   upon which relief may be granted with respect to, <u>inter alia</u>:  (1) the alleged filing

4   of a false police report; (2) the alleged false trial testimony of defendants and

5   witnesses; (3) the alleged promises/payments to witnesses; and (4) all claims

6   against the County and the LASD.  (Motion at 5-10).[7]  As discussed below, this

7   court concludes that Defendants' Motion should be granted to the extent it seeks

8   dismissal of the "false testimony" predicate of the malicious prosecution/due

9   process claim, and denied to the extent it otherwise seeks dismissal of

10  predicates/claims.

11         **A.     Standards Governing Motions to Dismiss**

12         Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to

13  contain a short and plain statement of the claim showing that the pleader is entitled

14  to relief.  <u>Bell Atlantic Corp. v. Twombly ("Twombly")</u>, 127 S. Ct. 1955, 1964

15  (2007) (citations omitted).  Specific facts are not necesssary; the statement need

16  only give the defendants fair notice of what the claim is and the grounds upon

17  which it rests.  <u>Twombly</u>, 127 S. Ct. 1955, 1964 (2007) (citations omitted).  While

18  a complaint does not need detailed factual allegations, a plaintiff's obligation to

19  provide the grounds of his entitlement to relief requires more than labels and

20  conclusions, and a formulaic recitation of the elements of a cause of action will

21  not do.  <u>Id.</u> at 1964-65 (citations omitted).  Factual allegations must be enough to

22  raise a right to relief above the speculative level, on the assumption that all the

23  allegations in the complaint are true.  <u>Id.</u> at 1965.  A plaintiff must proffer enough

24  facts to state a claim to relief that is plausible on its face.  <u>Id.</u> at 1974.  "A

25  document filed *pro se* is to be liberally construed, and a *pro se* complaint, however

26  _____

27         [7]Although Defendants' Motion also asserts that the First Amended Complaint fails to
    state an equal protection claim, Plaintiff's Response reflect that plaintiff wishes to dismiss such
28  claim. (Response at 12).  Consequently, Defendants' Motion should be granted to the extent it
    seeks dismissal of the equal protection claim.

7

inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007) (citations omitted).

Pursuant to Fed. R. Civ. P. 12(b)(6), a court may dismiss a complaint for failure to state a claim because:  (1) the complaint lacks a cognizable legal theory; or (2) the complaint alleges insufficient facts under a cognizable legal theory. <u>Balistreri v. Pacifica Police Department</u>, 901 F.2d 696, 699 (9th Cir. 1990).  In ruling on a motion to dismiss made pursuant to Rule 12(b)(6), the court must accept as true all factual allegations in a complaint.  <u>Erickson</u>, 127 S. Ct. at 2200. A Rule 12(b)(6) motion should be granted where the plaintiff fails to "nudge [his] claims across the line from conceivable to plausible." <u>Twombly</u>, 127 S. Ct. at 1974; <u>Mitan v. Feeney</u>, 497 F. Supp. 2d 1113, 1124 (C.D. Cal. 2007).  Where the complaint discloses a fact that necessarily defeats a claim, the court may dismiss on that basis as well.  <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

"In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the Complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." <u>See</u> <u>Schneider v. California Department of Corrections</u>, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (emphasis in original; citations omitted).  The court may, however, consider documents properly submitted as part of the complaint or upon which the complaint necessarily relies, if the authenticity of such documents is not contested.  <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001) (citations omitted).  A court is not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.  <u>Mitan</u>, 497 F. Supp. 2d at 1124 (citing <u>Steckman v. Hart Brewing, Inc.</u>, 143 F.3d 1293, 1295-96 (9th Cir. 1988)).  A court may consider judicially noticed matters of public record. <u>Lee</u>, 250 F.3d at 689.

If the court finds that a complaint has failed to state a claim, dismissal may be with or without leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc).  A court may consider factual allegations outside of the complaint in determining whether to grant leave to amend.  See Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).  Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by amendment, or where amendment would be futile.  Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1061 (9th Cir. 2004) (citations omitted).

**B.     Section 1983 – General Law**

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must establish that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the deprivation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted).  Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).

A person deprives another of a constitutional right, within the meaning of Section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which the plaintiff complains.  Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) (citing Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.  Id.  (citing Johnson, 588 F.2d at 743-44). In limited circumstances, a person can also be subject to Section 1983 liability for the acts of others.  Id.  Although there is no pure *respondeat superior* or agency liability under Section 1983, a supervisor is liable for the constitutional violations

9

1   of a subordinate "if the supervisor participated in or directed the violations, or

2   knew of the violations and failed to act to prevent them." Id.  (quoting Taylor v.

3   List, 880 F.2d 1040, 1045 (9th Cir. 1989)).

4        **C.   Malicious Prosecution/Due Process Claim – General Law**

5        Malicious prosecution, by itself, does not constitute a due process violation.

6   Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995).  To state a due

7   process claim cognizable under 42 U.S.C. § 1983, a plaintiff must show that

8   the defendants prosecuted him with malice and without probable cause, and that

9   they did so for the purpose of denying him a specific constitutional right.  Bretz v.

10  Kelman, 773 F.2d 1026, 1031 (9th Cir. 1985) (en banc); Cline v. Brusett, 661 F.2d

11  108, 112 (9th Cir. 1981).

12       Malicious prosecution actions are not limited to suits against prosecutors

13  and may be pursued against other persons who have wrongfully caused charges to

14  be filed.  Awabdy v. City of Adelanto, 368 F.3d 1062, 1067 (9th Cir. 2004);

15  Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126-27 (9th Cir. 2002).

16  Generally, the decision to file a criminal complaint is presumed to result from an

17  independent determination by the prosecutor and thus precludes liability for those

18  who participated in the investigation or filed a report that resulted in the initiation

19  of proceedings.  Awabdy, 368 F.3d at 1067; Smiddy v. Varney, 665 F.2d 261,

20  266-68 (9th Cir. 1981), cert. denied, 459 U.S. 829 (1982).  This presumption,

21  however, is an evidentiary presumption applicable at the summary judgment state;

22  it is not a pleading requirement to be applied to a motion to dismiss.  Galbraith,

23  307 F.3d at 1126; Marsh v. San Diego County, 432 F. Supp. 2d 1035, 1047 (S.D.

24  Cal. 2006) (citing Galbraith).  Further, the presumption of prosecutorial

25  independence does not bar a subsequent Section 1983 claim against state or local

26  officials who improperly exerted pressure on the prosecutor, knowingly provided

27  misinformation to him, concealed exculpatory evidence, or otherwise engaged in

28  wrongful or bad faith conduct that was actively instrumental in causing the

10

1    initiation of legal proceedings.  Awabdy, 368 F.3d at 1067; Galbraith, 307 F.3d at

2    1126-27.

3         Similarly, although a court's decision to hold a defendant to answer

4    following a preliminary hearing constitutes prima facie evidence of probable cause

5    in a Section 1983 malicious prosecution case, a plaintiff may rebut such finding by

6    showing that the criminal prosecution was induced by fraud, corruption, perjury,

7    fabricated evidence, or other wrongful conduct undertaken in bad faith.  Awabdy,

8    368 F.3d at 1068; Ramirez v. County of Los Angeles, 397 F. Supp. 2d 1208, 1225-

9    26  (C.D. Cal. 2005).  Accordingly, a decision to hold a plaintiff to answer after a

10   preliminary hearing would not prevent a plaintiff from maintaining a Section 1983

11   malicious prosecution action if he is able to prove that the criminal proceedings

12   were initiated on the basis of defendants' intentional and knowingly false

13   accusations and other malicious conduct.  Awabdy, 368 F.3d at 1068; Ramirez,

14   397 F. Supp. 2d at 1225-26.

15        **D.   Defendants' Motion**

16        The First Amended Complaint asserts a due process claim predicated upon

17   malicious prosecution.  More specifically, plaintiff alleges that defendants:

18   (1) generated and presented to the prosecutor, a police report which was materially

19   false and omitted material facts; (2) testified falsely and caused others to testify

20   falsely at a suppression hearing and trial; and (3) concealed impeachment evidence

21   regarding two witnesses – Sherouse and plaintiff's son.  Defendants contend that

22   plaintiff fails to state such a claim.

23        **1.   False Police Report**

24        Defendants contend that plaintiff's malicious prosecution claim should be

25   dismissed to the extent it is predicated upon the allegedly false police report

26   because the decision to bring charges was made by the District Attorney's Office –

27   which is absolutely immune – and the First Amended Complaint does not allege

28   that the prosecutor's decision was based on one report, rather than upon "the entire

11

1  mass of evidence ultimately presented at the criminal trial." (Defendants' Motion

2  at 5). This court disagrees.[8]

3      The First Complaint avers that defendants' allegedly false police report,

4  from which defendants' allegedly omitted material information, "caused" and

5  "resulted" in plaintiff being prosecuted in the underlying criminal case. (FAC at

6  1, 15). The First Amended Complaint further alleges that defendants acted

7  knowingly and maliciously. (FAC at 14). Even assuming that the presumption of

8  prosecutorial independence applied at this pleading stage, such presumption does

9  not bar a Section 1983 claim against an official who knowingly provided

10 misinformation to the prosecutor, concealed exculpatory evidence or otherwise

11 engaged in wrongful or bad faith conduct that was actively instrumental in causing

12 the initiation of legal proceedings. Here, the First Amended Complaint adequately

13 alleges that defendants' false report and presentation of same to the prosecutor

14 wrongfully caused charges to be brought against plaintiff.

15              **2.    False Trial Testimony**

16     Defendants next argue that plaintiff's malicious prosecution claim should be

17 dismissed to the extent it is predicated upon allegedly false trial testimony

18 because: (1) Aries' testimony and the testimony of defendant Harris concerning

19 Ortega's identification were not necessarily false; (2) plaintiff had available to him

20 well before trial, statements and investigative materials which could have been

21 used to cross-examine or impeach such witnesses regarding the alleged

22 inconsistencies; and (3) defendants are absolutely immune from suit for testifying

23 falsely or causing/conspiring with others to testify falsely.[9]

24

25

26     [8]The absolute prosecutorial immunity which applies to a prosecutor for actions taken in
   such prosecutor's capacity as an advocate for the state in initiating and pursuing a criminal
27 prosecution, see Kalina v. Fletcher, 522 U.S. 118, 123-25 (1997), does not extend to police
   officers. See Malley v. Briggs, 475 U.S. 335, 341-45 (1986).
28

       [9]Defendants do not specifically address the assertedly false testimony of defendants
   Harris and Taylor and other witnesses regarding the Sherouse interview at the suppression
   hearing or trial. (First Amended Complaint at 8-9).

1   While defendants' first assertion may well turn out to be correct, this court,

2   on a motion to dismiss, is required to accept as true the factual allegations in the

3   First Amended Complaint.  It alleges: (i) defendant Harris "committed perjury";

4   (ii) defendants allowed or encouraged witnesses to alter their testimony to fit

5   defendants' false statements in the false police report and to "testify falsely";

6   (iii) defendants failed to prevent known material perjured testimony; and

7   (iv) defendants presented intentional false testimony to the jury which defendants

8   knew was false.  (FAC at 3-4, 6, 9, 15).

9   Although defendants' second assertion may suggest that plaintiff cannot

10  state a free-standing suppression of exculpatory evidence claim based upon the

11  allegedly false testimony because he had possession of the potentially impeaching

12  evidence to which defendants point, defendants fail to demonstrate that the same is

13  true for a malicious prosecution claim predicated upon false testimony.  See

14  Ramirez, 397 F. Supp. 2d at 1227 (although independent claim for suppression of

15  exculpatory evidence may not lie if plaintiff actually received all evidence before

16  trial, was found not guilty of the crime, and was ultimately adjudged factually

17  innocent, evidence of suppression may nonetheless bear upon a malicious

18  prosecution claim).

19  Defendants' third assertion requires deeper analysis.  Witnesses, including

20  police officers, have absolute immunity from civil liability for damages under

21  Section 1983 for testimony given at trial and at adversarial pretrial hearings.

22  Briscoe v. LaHue, 460 U.S. 325, 326, 329 (1983) (trial); Franklin v. Terr, 201 F.3d

23  1098, 1101 (9th Cir. 2000) (trial); Holt v. Castaneda, 832 F.2d 123, 127 (9th Cir.

24  1987) (adversarial pretrial proceedings), cert. denied, 485 U.S. 979 (1988).  The

25  immunity applies to police officers who allegedly give perjured testimony, and to

26  testifying witnesses who allegedly conspire to present another's perjured

27  testimony at trial.  Briscoe, 460 U.S. at 326; Franklin, 201 F.3d at 1102-03.

28  ///

13

1    Absolute witness immunity, however, does not extend to a "complaining

2    witness" who may be said wrongly to have initiated a prosecution.  Malley v.

3    Briggs, 475 U.S. 335, 341 (1986); Paine v. City of Lompoc, 265 F.3d 975, 981 n.2

4    (9th Cir. 2001).  Officers who functionally serve as complaining witnesses who

5    may be said to have initiated a plaintiff's prosecution are not entitled to absolute

6    immunity for false statements, including testimony.  Harris v. Roderick, 126 F.3d

7    1189, 1199 (9th Cir. 1997) (police officers not entitled to absolute immunity for

8    false grand jury or trial testimony – testimony was simply part of implementation

9    of conspiracy to construct false story about events; officers deliberately set in

10   motion series of events they anticipated or should have anticipated would lead to

11   indictment, arrest and trial), cert. denied, 522 U.S. 1115 (1998).  Defendants

12   suggest that the First Amended Complaint contains no allegation of fact from

13   which it could be concluded that either defendant Harris or defendant Taylor

14   testified before a grand jury or otherwise acted as a "complaining witness" who

15   initiated the prosecution against plaintiff.

16       This court agrees that the allegations in the First Amended Complaint are

17   insufficient to suggest that defendants were "complaining witnesses," and that the

18   malicious prosecution claim, as currently alleged, should be dismissed to the

19   extent predicated upon the allegedly false testimony of defendants and/or

20   witnesses at trial.  However, as the court is not currently convinced that plaintiff

21   could not allege facts from which it plausibly could be concluded that defendants

22   did act as "complaining witnesses," dismissal should be with leave to amend to

23   permit him to do so if he can.

24              **3.    Promises/Benefits to Witnesses**

25       Defendants also assert that the court should dismiss the malicious

26   prosecution/due process claim to the extent such claim is based upon promises/

27   benefits to Sherouse and plaintiff's son because plaintiff suffered no constitutional

28   ///

14

1   injury as a result of such conduct.  (Motion at 8-9).  Defendants have failed to

2   demonstrate that dismissal is appropriate.

3        Liberally construed, the First Amended Complaint alleges that defendants

4   promised financial support/payments or actually provided benefits to Sherouse and

5   plaintiff's son to secure those witnesses' testimony against plaintiff, concealed

6   material exculpatory records impacting Sherouse's entitlement to such benefits,

7   and denied making promises to financially support plaintiff's son.  (FAC at 10-

8   11).  Defendants agree that payments to witnesses may constitute a due process

9   violation if the payments are concealed from a criminal defendant.  (Motion at 9).

10  Defendants contend, however, that plaintiff has failed to allege such concealment,

11  and that plaintiff was aware of the payments because they were "the subject both

12  of examination at trial and of motions to suppress evidence." (Motion at 9).  To

13  the extent defendants suggest that the First Amended Complaint fails to allege

14  concealment, they are incorrect.  As noted above, plaintiff alleges that defendants

15  concealed records impacting Sherouse's entitlement to benefits and denied making

16  promises to support plaintiff's son.  To the extent defendants base their argument

17  on the asserted fact that plaintiff was contemporaneously aware of the promises

18  and benefits, defendants rely upon facts not alleged in the First Amended

19  Complaint which may not be considered by the court at this juncture.  Finally, as

20  noted above, even assuming that plaintiff does not state a free-standing

21  suppression of exculpatory evidence claim, defendants fail to demonstrate that the

22  alleged conduct cannot support a malicious prosecution claim.  See Ramirez, 397

23  F. Supp. 2d at 1227.  Consequently, Defendants' Motion should be denied in this

24  respect.

### 4.    Municipal Liability

26       Defendants contend that all claims against the County and the LASD must

27  be dismissed because the First Amended Complaint (1) fails to state a viable claim

28  against the individual defendant County employees and therefore cannot state a

15

1   claim against the County or the LASD; and (2) fails to allege any County or LASD

2   policy, custom, or practice, and therefore fails to state a claim for liability against a

3   local government entity.  (Motion at 9-10).  The court disagrees.

4        First, defendants here, as discussed above, have not demonstrated that

5   plaintiff fails to state a viable malicious prosecution claim against the individual

6   defendants to the extent predicated upon a false police report and

7   promises/benefits to witnesses.

8        Second, plaintiff satisfies the minimal requirements for pleading a claim

9   against a local government.  A local government entity may be held liable under

10  Section 1983 for constitutional torts committed by its officials pursuant to a local

11  government policy or custom.  See Board of County Commissioners v. Brown,

12  520 U.S. 397, 402-04 (1997); Monell v. Department of Social Services, 436 U.S.

13  658, 691, 694-95 (1978); see also Gibson v. County of Washoe, Nev., 290 F.3d

14  1175, 1185-87 (9th Cir. 2002), cert. denied, 537 U.S. 1106 (2003).

15       No heightened pleading standard applies to claims of local government

16  liability.  Leatherman v. Tarrant County Narcotics Intelligence and Coordination

17  Unit, 507 U.S. 163, 167-68 (1993).  In the Ninth Circuit, a claim of local

18  government liability under Section 1983 will withstand a motion to dismiss even if

19  the claim is based on nothing more than a bare allegation that the individual

20  officers' conduct conformed to official policy, custom, or practice.  Galbraith, 307

21  F.3d at 1127 (9th Cir. 2002) (citations and internal quotations omitted).

22       Here, plaintiff alleges that the acts of defendants Harris and Taylor were

23  undertaken pursuant to policies, rules, regulations, practices and customs or

24  usages (policies and practices) of the County /LASD.  (FAC at 2).  Plaintiff also

25  alleges that the actions of the defendants were part of a "departmental sanctioned

26  cover-up."  (FAC at 2).  These allegations suffice to allege a local government

27  liability claim against the County and the LASD.  See Galbraith, 307 F.3d at 1127.

28  ///

16

**IV.   MOTION TO STRIKE**

   **A.   Standards Governing Motions to Strike**

   Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a court may strike from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  Fed. R. Civ. P. 12(f); PAE Government Services, Inc. v. MPRI, Inc., 2007 WL 4394427, at *1 (9th Cir. Dec. 18, 2007). "Immaterial" matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994) (citation omitted).  "Impertinent" matter consists of statements that do not pertain, and are not necessary, to the issues in question.  Id.

   The essential function of a Rule 12(f) motion is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.  Estate of Migliaccio v. Midland National Life Insurance Co., 436 F. Supp. 2d 1095, 1100 (C.D. Cal. 2006) (citations and internal quotations omitted).  In considering a motion to strike, the court views the pleadings in the light most favorable to the non-moving party.  In re 2The Mart.com, Inc. v. Securities Litigation, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). "The grounds for the motion must appear on the face of the pleading under attack or from matter which the court may judicially notice."  SEC v. Sands, 902 F. Supp. 1149, 1165 (C.D. Cal. 1999) (citation omitted).  A motion to strike simply tests whether a pleading contains inappropriate material, and is not the equivalent of a motion to dismiss for failure to state a claim upon which relief may be granted. Estate of Migliaccio, 436 F. Supp. 2d at 1100.  A prayer for relief which is not available as a matter of law may be stricken under Rule 12(f).  Id. (citation omitted).  However, because of the limited importance of pleadings in federal practice, motions to strike pursuant to Rule 12(f) are disfavored.  Id. (citations and internal quotations omitted).  A motion to strike on statute of limitations grounds

17

1  fails to establish the elements of Rule 12(f) and therefore is inappropriate.  <u>See</u>
2  <u>Burns v. First American Bank</u>, 2005 WL 1126904, at *6 (N.D. Ill. Apr. 28, 2005).
3  A court must deny a motion to strike "if any doubt exists whether the allegations
4  in the pleadings might be relevant in the action."  <u>Montecino v. Spherion Corp.</u>,
5  427 F. Supp. 2d 965, 967 (C.D. Cal. 2006) (citation omitted).

6      **B.   Analysis**

7      Defendants request that the following allegations in the First Amended
8  Complaint, among others, be stricken:  (1) plaintiff's prayer for attorney's fees;
9  (2) references to plaintiff's 1997 acquittal on the charge of attempted murder of
10 Sherouse; (3) references to the individual defendants' interview of victim
11 Sherouse and witness protection payments made to her; and (4) references to
12 lawsuits by plaintiff's father against defendants.[10]  (Defendants' Motion at 2, 10-
13 12).  To the extent Defendants' Motion is not mooted by dismissal of First
14 Amended Complaint, it should be granted in part and denied in part.

15     First, Defendants' Motion is well-taken to the extent it seeks to strike
16 plaintiff's request for attorney's fees.  A *pro se* litigant cannot recover attorney's
17 fees in a civil rights action.  <u>Kay v. Ehrler</u>, 499 U.S. 432, 436 (1991); <u>Gonzalez v.</u>
18 <u>Kangas</u>, 814 F.2d 1411, 1412 (9th Cir. 1987).  Therefore, Defendants' Motion
19 should be granted to the extent it seeks to strike plaintiff's request for attorney's
20 fees from the prayer for relief.

21     Second, to the extent Defendants' Motion seeks to strike allegations (other
22 than in the prayer for relief discussed in note 10, <u>supra</u>) regarding plaintiff's 1997

23 _____

24     [10]Defendants also argue that the court should order stricken from the prayer for relief:
(1) plaintiff's request that defendants be sent to state prison; and (2) plaintiff's request for an
25 order reopening criminal cases in which defendants were involved.  (Motion at 2, 10-12).
Plaintiff's Response reflects that plaintiff seeks dismissal of such prayers for relief, as well as the
26 prayer for relief relating to (as opposed to allegations in the body of the First Amended
Complaint regarding) plaintiff's acquittal on an attempted murder charge.  (Response at 3, 10).
27 Consequently, Defendants' Motion should be granted to the extent it seeks to strike such
requests/references in the prayer for relief.
28

1  acquittal of the attempted murder of Sherouse, Defendants' Motion should be

2  denied.  Defendants argue that such references should be stricken because the

3  statute of limitations to pursue a Section 1983 claim predicated on such acquittal

4  has expired.  However, a motion to strike on statute of limitations grounds is

5  improper.  See Burns, 2005 WL 1126904, at *6.  Consequently, Defendants'

6  Motion should be denied to the extent it seeks to strike allegations (other than in

7  the prayer for relief) to plaintiff's 1997 acquittal of the attempted murder of

8  Sherouse.[11]

9       Third, to the extent Defendants' Motion seeks to strike allegations regarding

10  the Sherouse interview, Defendants' Motion should also be denied.  Defendants

11  contend that the failure of the First Amended Complaint to allege that Sherouse

12  testified at plaintiff's retrial (and the fact that she did not) render any description

13  of the Sherouse interview immaterial.  (Motion at 2, 10-11; Reply at 7).  Plaintiff

14  contends that Sherouse did testify at trial, and that the circumstances of the

15  interview are relevant to other aspects of his claims.  (Response at 3-4).  As noted

16  above, in resolving a motion to strike, this court may not consider factual

17  allegations not contained in the First Amended Complaint.  As Defendants'

18  Motion to strike allegations regarding the Sherouse interview depends to a degree

19  upon facts not properly before the court, and as defendants have not persuaded the

20  court that no doubt exists as to whether such allegations might be relevant in this

21  action, Defendants' Motion should be denied to the extent it seeks to strike such

22  allegations.

23       Finally, to the extent Defendants' Motion seeks to strike allegations

24  regarding plaintiff's father's lawsuits against defendants, Defendants' Motion

25

26       [11]Although plaintiff has conceded that a malicious prosecution claim predicated upon his

27  1997 acquittal is barred by the statute of limitations, he nonetheless opposes striking allegations
regarding such acquittal, other than in the prayer for relief, essentially because he believes such

28  allegations are nonetheless relevant to his remaining claims.  (Plaintiff's Response at 3).

should also be denied.[12]  Defendants contend that any description of prior

litigation between defendants and plaintiff's father is immaterial, impertinent and

scandalous, because plaintiff assertedly failed to allege that defendants held a

grudge against plaintiff.  (Motion at 2, 11-12).  According to defendants, "it is

obvious . . . that the [prior cases have] nothing whatsoever to do with the instant

case," and that "it is almost impossible to imagine a scenario" where the past cases

would have an impact on the current one.  (Motion at 12, Reply at 7).  Plaintiff

contends that the prior litigation is related to the current case because bears upon

defendants' state of mind.  (Response at 9).  Construed liberally, plaintiff appears

to suggest that such lawsuits may show bias.  Defendants essentially argue that

plaintiff's contention that such lawsuits would cause defendants to be biased

against him is so unlikely as to be unworthy of belief.  This, however, is not the

test for granting a motion to strike under Rule 12(f).  As defendants have not

persuaded the court that no doubt exists as to whether such allegations might be

relevant in this action, Defendants' Motion should be denied to the extent it seeks

to strike such allegations.

///

///

///

///

///

///

///

---

[12]Defendants correctly note that this court may take judicial notice of prior lawsuits filed in the Central District of California by plaintiff's father.  (Defendants' Motion at 11).  See United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) (court may take judicial notice of its own records in other cases). Defendants do not, however request that the court do so.  In any event, this court's analysis and determination would remain unchanged irrespective of whether or not it took judicial notice of such lawsuits.

**V.    CONCLUSION**

For the reasons stated above:

A.    Defendants' Motion should be granted in part as follows:

1.    The equal protection claim should be dismissed.

2.    The "false testimony" predicate for the malicious prosecution/ due process claim should be dismissed.

3.    The following portions of the prayer for relief in the First Amended Complaint should be stricken and not included in the prayer of any Second Amended Complaint:  (a) the request that defendants be sent to state prison; (2) the request for an order reopening criminal cases in which defendants were involved;  (3) the reference to plaintiff's acquittal on the 1997 attempted murder charge; and (4) the request for attorney's fees.

B.    Defendants' Motion should otherwise be denied.

C.    Plaintiff's Motion to Amend should be denied without prejudice.

**VI.    RECOMMENDATION**

IT THEREFORE IS RECOMMENDED that the District Court issue an Order:  (1) approving and adopting this Report and Recommendation; (2) granting in part and denying in part Defendants' Motion, as detailed in the Report and Recommendation; (3) dismissing the First Amended Complaint with leave to amend; (4) striking from the prayer of the First Amended Complaint, and directing plaintiff not to include in the prayer of any Second Amended Complaint:  (a) the request that defendants be sent to state prison; (b) the request for an order reopening criminal cases in which defendants were involved;  (c) the reference to plaintiff's acquittal on the 1997 attempted murder charge; and (d) the request for attorney's fees; (5) denying Plaintiff's Motion to Amend without prejudice; and (6) granting plaintiff leave to file and serve a Second Amended Complaint which comports with this Report and Recommendation within thirty (30) days of the

Court's Order adopting this Report and Recommendation;[13] and (7) cautioning plaintiff that the failure timely to file a Second Amended Complaint will subject this action to dismissal based upon plaintiff's failure to prosecute.

DATED:   December 21, 2007

_____
/s/

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[13]Any Second Amended Complaint must: (a) be labeled: "Second Amended Complaint;" (b) be complete in and of itself and not refer in any manner to the original, the First Amended Complaint or the previously proposed second amended complaint; (c) contain a "short and plain" statement of the claim(s) for relief.  See Fed. R. Civ. P. 8(a); (d) make each allegation "simple, concise and direct." Fed. R. Civ. P. 8(d)(1); (e) make allegations in numbered paragraphs, "each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b); (f) set forth clearly the sequence of events giving rise to the claim(s) for relief; and (g) not add defendants without leave of court.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TOMMY SIMMONS, III,                    )    Case No. CV 04-9731 SVW(JC)
                                       )
                    Plaintiff,         )    (PROPOSED)
                                       )
            v.                         )    ORDER ADOPTING FINDINGS,
                                       )    CONCLUSIONS, AND
COUNTY OF LOS ANGELES,                 )    RECOMMENDATIONS OF
et al.,                                )    UNITED STATES MAGISTRATE
                                       )    JUDGE
                                       )
                    Defendants.        )
_____

      Pursuant to 28 U.S.C. § 636, the Court has reviewed the First Amended

Complaint, Defendants' Motion to Dismiss ("Defendants' Motion"), Plaintiff's

Response thereto, Defendants' Reply, Plaintiff's Motion to Amend ("Plaintiff's

Motion"), Defendants' Opposition thereto, and all of the records herein, including

the Report and Recommendation of United States Magistrate Judge.  The Court

approves and adopts the United States Magistrate Judge's Report and

Recommendation.

      IT IS HEREBY ORDERED that:  (1) Defendants' Motion is granted in part

and denied in part, as detailed in the Report and Recommendation; (2) the First

Amended Complaint is dismissed with leave to amend; (3) plaintiff shall strike

from the prayer in the First Amended Complaint, and not include in the prayer of any Second Amended Complaint:  (a) the request that defendants be sent to state prison; (b) the request for an order reopening criminal cases in which defendants were involved; (c) the reference to plaintiff's acquittal on the 1997 attempted murder charge; and (d) the request for attorney's fees; (4) Plaintiff's Motion is denied without prejudice; (5) plaintiff shall file any Second Amended Complaint, which must comport with this Report and Recommendation, within thirty (30) days, if he still desires to pursue this action; and (6) plaintiff's failure timely to file a Second Amended Complaint will subject this action to dismissal based upon plaintiff's failure to prosecute.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the United States Magistrate Judge's Report and Recommendation by United States mail on plaintiff and on defendants' counsel.

IT IS SO ORDERED.


DATED:  _____



_____
HONORABLE STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE

2